UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 12-10136-RWZ

UNITED STATES OF AMERICA

v.

DONALD SCOTT

MEMORANDUM OF DECISION

November 10, 2014

ZOBEL, D.J.

Defendant seeks to exclude evidence derived directly and indirectly from a warrantless GPS search.

**I. Facts**

Based on the evidence adduced at the hearing on defendant's motion, I find the following facts.

Defendant Donald Scott became the subject of investigation after he was stopped at Boston Logan Airport on July 19, 2010, on a trip bound for Los Angeles with $71,000 in cash. The money was packaged in cellophane, defendant was carrying more than one cellular phone, and he could provide no details, business cards, or external proof of his stated reason for travel that he was a music promoter. These facts, along with a drug dog's alerting to narcotics on the cellophane-packaged

currency, triggered further official inquiry.

During the course of the subsequent investigation the agents obtained defendant's banking and cell phone records, monitored his calls, checked his contacts and conducted visual surveillance of him. They found frequent deposits of cash in Boston and subsequent withdrawals in Los Angeles. On one occasion, defendant was intercepted at the Los Angeles airport and found to be carrying $20,000 in cash. A search of trash at defendant's residence led to the discovery of three bags of cellophane packaging material that smelled of marijuana, and with marijuana on tape stuck to the material.

Starting in October 2010 and continuing to December 20, 2011, the agents periodically installed GPS tracking devices on one or another of the defendant's cars. They obtained neither a search warrant nor consent. On December 20, 2011, Special Agent ("SA") Richard Atwood of the Department of Homeland Security, the leader of the investigation of defendant, instructed Technical Officer William Anderson to install a GPS tracker on defendant's Nissan Maxima, and Anderson did so.

On December 21, 2011, at 1:30 p.m., SA Atwood checked the tracking information of Scott's Nissan and noticed it had left Massachusetts at approximately 7:45 a.m. and arrived in New York at some time after 1:00 p.m. It left the New York area around 2:00 p.m. and headed north on I-95. According to SA Atwood, this pattern of travel is indicative of someone picking-up or dropping-off something. SA Atwood requested the Massachusetts State Police ("MSP") to pull the car over if it crossed their path. The MSP and the Drug Enforcement Agency ("DEA") established surveillance at

the border of Massachusetts and Rhode Island to identify defendant as he entered Massachusetts.

MSP Trooper Kennedy identified Mr. Scott's car as it passed into Massachusetts and recognized that the left taillight of the Nissan was not functional. She informed MSP Trooper Kelly, who ultimately made the stop at approximately 7:30 p.m. after locating the vehicle from the description furnished and GPS coordinates.

Several law enforcement personnel, including MSP Trooper Morris and his drug-sniffing dog, "Rocky", assembled in short order. Mr. Scott and his passenger, Petrina Williams, were asked to step out of the car. After they complied, Trooper Morris performed an exterior scan of the vehicle with Rocky. Rocky alerted to the presence of narcotics in the trunk area. Trooper Morris then opened the trunk, at which point there emanated a strong smell of unburnt marijuana. Inside the trunk he saw a bag with multi-colored pills which he believed to be narcotics. The pills proved to be Benzylpiperazine ("BZP"), an illegal drug.

## II. Conclusions of Law

### A. The GPS Tracking

The Fourth Amendment to the United States Constitution prohibits unreasonable searches. U.S. Const. Amend. IV. Evidence obtained in violation of this ban must be suppressed under the prudential "exclusionary rule." Davis v. United States, ––– U.S. –––, 131 S.Ct. 2419, 2427 (2011). Tracking an individual's car by attaching to it a GPS device is a search within the meaning of the Fourth Amendment. United States v. Jones, 132 S. Ct. 945, 949 (2012). It is undisputed that the several agents

investigating defendant did not obtain a warrant prior to the placement and use of the GPS device on defendant's cars. As a result, the evidence obtained from that tracking is subject to suppression if the agents' conduct does not fall within an exception to the exclusionary rule.

One such is the "good-faith" exception, allowing the use at trial of evidence obtained in violation of the Fourth Amendment when the police officers have an objectively reasonable good-faith belief that their conduct is lawful. United States v. Rose, 914 F. Supp. 2d 15, 22 (D. Mass. 2012). The good-faith exception applies even to an officer's "objectively reasonable reliance on binding judicial precedent" that is subsequently overturned. Davis, 131 S.Ct. at 2428.

The facts of United States v. Sparks are closely analogous. United States v. Sparks, 711 F.3d 58, 67 (1st Cir.) cert. denied, 134 S. Ct. 204 (2013). In Sparks, "at the time of the GPS surveillance. . . , settled, binding precedent in the form of [United States v. Knotts, 460 U.S. 276 (1983)] and [United States v. Moore, 562 F.2d 106 (1st Cir. 1977)] authorized the agents' conduct. Davis thus preclude[d] suppression of the resulting evidence, even if the agents' actions violated the Fourth Amendment." Sparks, 711 F.3d at 67; accord United States v. Oladosu, 744 F.3d 36, 39 (1st Cir. 2014), cert. denied, No. 13 10349, 2014 WL 2472448 (U.S. Oct. 6, 2014). The search here was conducted in reliance on identical precedent and therefore falls squarely within Sparks.

Defendant attempts to distinguish Sparks in that the Supreme Court had already granted certiorari and heard arguments in Jones at the time of the relevant search in

4

this case.  This distinction is without merit.  A mere grant of certiorari does not change the binding nature of circuit precedent.[1]  See United States v. Barraza-Maldonado, 732 F.3d 865, 869 (8th Cir. 2013) ("Officers should not be faulted for adhering to existing precedent until that precedent is authoritatively overruled.").

### B. The Traffic Stop

Because the evidence obtained from the GPS tracking is admissible, the rest of the analysis becomes academic.  It is undisputed that defendant's car had a non-functioning taillight at the time of the traffic stop.  In Massachusetts, this constituted a traffic violation.  It is well settled that police may stop an automobile where a traffic violation has occurred.  Whren v. United States, 517 U.S. 806, 811-13 (1996); see United States v. McGregor, 650 F.3d 813, 822 (1st Cir. 2011).  That there were other subjective motivations behind the stop was irrelevant because reasonable suspicion was objectively valid based on the observation of the taillight.  See Whren, 517 U.S. at 811-13.

Even if the taillight had been functioning, the police had reasonable suspicion based on the totality of the circumstances that defendant's car was transporting illegal drugs at the time of the search, thus permitting the stop.[2]  See Terry v. Ohio, 392 U.S.

---

[1] Nor can it be the rule that police must abstain from theretofore lawful activity during the pendency of every criminal procedure case before the Supreme Court.  Such a rule would deter huge swaths of legal police conduct given that many challenged police procedures are eventually deemed lawful.  "The deterrent effect of exclusion in such a case can only be to discourage the officer from 'do[ing] his duty.'"  Davis, 131 S. Ct. at 2429.

[2] The relevant knowledge for reasonable suspicion under Terry is the collective knowledge of all law enforcement officers involved in the investigation. United States v. Brown, 621 F.3d 48, 57 (1st Cir. 2010).

1, 21 (1968); United States v. Chhien, 266 F.3d 1, 6 (1st Cir. 2001). These circumstances included defendant's pattern of transporting large quantities of cash to California, his last minute flights on one-way tickets, and large quantities of marijuana packaging material and marijuana residue in his trash. The facts justifying reasonable suspicion also included the GPS tracking information from defendant's car that indicated a likely drug run to New York based on his observed patterns.

### C. The Drug Dog and Search of the Trunk

It is not disputed that Rocky "alerted" to the trunk during an exterior scan, indicating the presence of drugs. This use of Rocky did not constitute a search, see Illinois v. Caballes, 543 U.S. 405, 407 (2005), and provided the police with probable cause to search the trunk. See United States v. Ross, 456 U.S. 798, 808-809 (1982). With probable cause to look inside the trunk, Trooper Morris' observation and notice of the contents of the trunk did not violate the Fourth Amendment.

## IV. Conclusion

Defendant's Motion to Suppress (Docket # 27) is DENIED.

    November 10, 2014                         /s/Rya W. Zobel
        DATE                                      RYA W. ZOBEL
                                                        UNITED STATES DISTRICT JUDGE